396 F.Supp. 1362 (1975)
UNITED STATES of America ex rel. Calvin CANNON
v.
Robert L. JOHNSON.
Civ. A. No. 73-2395.
United States District Court, E. D. Pennsylvania.
June 12, 1975.
*1363 Richard H. Elliott, Philadelphia, Pa., for petitioner.
F. Emmett Fitzpatrick, Dist. Atty., Abraham Gafni, Deputy Dist. Atty. for Law, Steven Goldblatt, Chief of Appeals Div., Bonnie Brigance Leadbetter, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

OPINION AND ORDER
EDWARD R. BECKER, District Judge.

I. Preliminary Statement

This habeas corpus case raises squarely the question of the retroactivity of the en banc holding of the United States Court of Appeals for the Third Circuit in United States ex rel. Matthews v. Johnson, 503 F.2d 339 (3d Cir. 1974), cert. denied, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975) (hereinafter "Matthews"). In Matthews, it was decided that where, under Pennsylvania law, the jury had the power and prerogative to return a verdict of voluntary manslaughter in any murder prosecution, even in the absence of any evidence of provocation or passion which would require an instruction on voluntary manslaughter, and where there were no legal standards to guide the judge in determining whether to submit a voluntary manslaughter instruction in the absence of such evidence, due process was denied in refusing a request for a voluntary manslaughter instruction.[1]
Relator is a state prisoner who was convicted of murdering his mother-in-law by a Philadelphia Common Pleas Court jury on June 25, 1970. Prior to the court's charge, relator's counsel requested the court to instruct the jury as to its right to return a verdict of voluntary *1364 manslaughter. The trial judge refused the request on the basis that there was no evidence which would support such a verdict. The jury found relator guilty of murder in the first degree and fixed the sentence at life imprisonment.[2] After relator's post-trial motions for a new trial and in arrest of judgment were denied by a court en banc, he filed an appeal with the Supreme Court of Pennsylvania which affirmed the judgment of sentence on September 19, 1973. Commonwealth v. Cannon, 453 Pa. 389, 309 A.2d 384 (1973).[3]
Relator's petition for a writ of habeas corpus asserted six claims. We disposed of five of the six claims by approving the Report and Recommendation of the United States Magistrate who found them to be without merit.[4] We thereupon appointed Richard H. Elliott, Esquire as counsel for the purpose of briefing and arguing the question of the retroactivity of Matthews.[5] It soon appeared that there was pending in this court on the docket of our colleague, the Honorable J. William Ditter, Jr., another case raising the identical issue.[6] Judge Ditter also appointed Mr. Elliott as counsel for relator and argument in the two cases was consolidated.
During oral argument, as it had in its brief, the Commonwealth advanced the proposition that there would be a substantial and adverse effect upon the administration of justice if Matthews were applied retroactively. In support of that proposition, the Commonwealth relied upon extensive data which it had collected and set forth at pp. 5 to 7 of its brief. Mr. Elliott stated that he would not controvert the data thus compiled and that the court could take cognizance of it (though he asserted it to be irrelevant on his theory of the case). We inquired as to the source of this data and Mrs. Leadbetter, the attorney for the Commonwealth, informed us that the data had been compiled by Assistant District Attorney Deborah E. Glass from the dockets and records of: (1) the Pennsylvania Board of Probation and Parole; (2) the Pennsylvania Bureau of Corrections; (3) the Administrative Judge of the Trial Division of the Philadelphia Court of Common Pleas; (4) the Homicide Division of the Philadelphia District Attorney's office; and (5) the Supreme Court of Pennsylvania. We therefore directed that an affidavit be taken by Miss Glass confirming Mrs. Leadbetter's representations and authenticating the data in the brief, and that the affidavit be filed of record. This has been done.
It is appropriate to note, at this juncture, that we do not write upon a tabula rasa. For, in Matthews, Judge Aldisert joined by Judges Rosenn and Weis, considered the retroactivity issue *1365 and concluded, after considerable discussion, that full retroactivity should not be accorded the decision. A majority of the court (presumably because the matter was not therein briefed and argued) was unwilling to consider the issue; hence, Judge Aldisert's views cannot be said to represent the views of the court. As it happens, however, our views on the most critical aspect of this case are similar to those of Judge Aldisert, and we will draw upon his opinion herein.
We hold that full retroactivity should not be accorded to Matthews and that relief should not be granted to relator. We turn now to a statement of the reasons for that holding. Judge Ditter has informed us that he shares our views and the reasons we state in this opinion for them. Because our case bears the lower docket number, we have, in accordance with the custom in this court, borne the labors of writing the necessary opinion. Judge Ditter will enter an order denying relief in the White case.

II. Retroactivity of Newly Mandated Constitutional Standards for Criminal Procedure: General Principles

The fundamental principles applicable to a determination of retroactivity of newly mandated constitutional standards for criminal procedure were announced by the Supreme Court in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).[7] As the Supreme Court recently summarized them in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), Linkletter calls for the consideration of three criteria:
(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.
Id. at 297, 87 S.Ct. at 1970.[8] Reliance and burden on the administration of justice have controlling significance, however, only when the purpose of the rule in question does not clearly favor either retroactivity or prospectivity. Desist v. United States, 394 U.S. 244, 251, 89 S. Ct. 1030, 22 L.Ed.2d 248 (1969).[9] Moreover, where the "major purpose" of the new constitutional doctrine can be classified as being designed to overcome an aspect of the trial that "substantially impaired" the trial's truth-finding function and thereupon raised serious questions "about the accuracy of guilty verdicts in past trials," the new rule should be granted full retroactivity (without regard to reliance and administrative burden). Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L. Ed.2d 388 (1970).
Williams v. United States, supra, was not the first case in which the Supreme Court pointed out that retroactive effect must be accorded to a new rule which implicates the truth-finding function. The Court's observations to that effect in two prior cases are worthy of note for semantic reasons, i. e. they pose the issue in slightly different phraseology which itself is helpful in framing the issues here. In Tehan v. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453 (1966), the Court spoke in terms of whether the system was infected with a "clear danger of convicting the innocent". In Roberts v. Russell, 392 U.S. 293, 295, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100 (1968), the Court asked whether the procedures followed presented a serious risk that "the issue of guilt or innocence may not have been reliably determined". *1366 We will advert to these formulations below.
An extended discussion of the caselaw on retroactivity would unduly burden the reader and will not be engaged in here. Instead, we have attached an appendix to this opinion containing a compilation of the Supreme Court's retroactivity decisions over the last decade in criminal matters, to which we have added recent retroactivity decisions of the Third Circuit which have not been the subject of Supreme Court review. A review of that appendix readily demonstrates the accuracy of the court's observations in United States v. Zirpolo, 450 F.2d 424, 432 (3d Cir. 1971) that, generally, rulings not primarily designed to enhance the reliability of the fact-finding or truth-determining process have not been given retroactive effect.[10]

III. The Purpose of the Matthews Rule; The Retroactivity Principles Applied

The foregoing analysis dictates that we first examine the purpose of the Matthews rule; hence, we must explicate the Matthews opinion. Pennsylvania substantive law has always recognized the jury's "power" to return a manslaughter verdict if the court submits the issue to it, even where there is no evidence of passion or provocation, as a function of:
a realistic appreciation of the humanity of those who sit on our juries, and the legal concept that voluntary manslaughter is by definition a lesser offense than murder but one included in a murder indictment.
Commonwealth v. Hoffman, 439 Pa. 348, 266 A.2d 726, 732 (1970). The Matthews court took notice of this conceptual framework, and also of a second rule which gives a trial judge complete discretion in deciding whether or not to submit voluntary manslaughter to the jury as a possible verdict where there is no evidence of passion or provocation.[11] The right to refuse to submit voluntary manslaughter is said to follow, in turn, from the principle that:
. . . a charge on a point or issue which is unsupported by any evidence ". . . is likely to confuse the jury and obstruct Justice." Commonwealth v. Pavillard, 421 Pa. 571, 220 A.2d 807 (1966).
Commonwealth v. Matthews, 446 Pa. 65, 79, 285 A.2d 510, 517 (1971). Judge Aldisert, speaking for the court in Matthews, went on to describe the genesis of the federal constitutional problem as
the anomaly that although the jury has unfettered power to return a voluntary manslaughter verdict as a lesser included offense of a murder indictment, it could not do so if the trial judge refused to charge on this point. Thus, whether the jury was given this opportunity was solely dependent upon the unrestricted discretion of the trial judge.
503 F.2d at 342 (footnote omitted).
It is not difficult to extract from the Matthews opinion the purpose of the rule announced therein which (rule) is recited at the outset of this opinion. Judge Aldisert framed the issue by observing that the customs of procedural due process are framed by canons of decency and fairness and this nation's historic desire to minimize arbitrariness in judicial activity. Adverting to the Supreme Court's opinion in Duncan v. Louisiana, 391 U.S. 145, 156, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), he focused upon the problem of the biased or eccentric judge. Noting that relator's jury was given the option of returning a verdict *1367 of murder in the first degree (calling for life imprisonment or death), or, alternatively, a verdict of murder in the second degree (calling for a sentence of up to twenty years), whereas another trial judge, or the same judge on another day, could have permitted the jury to return a verdict of voluntary manslaughter (calling for a sentence of no more than twelve years), Judge Aldisert wrote:
To deny appellee the possibility of a lesser verdict with a lesser restraint of liberty is permissible only if the denial comports with due process. To deny appellee the possibility of a lesser restraint of liberty because of a practice which permits arbitrary trial court activity is offensive to those settled concepts of due process.
503 F.2d at 345.
Judge Aldisert concluded his analysis by analogizing the problem to the Supreme Court's declaration that the Pennsylvania Act which enabled a criminal jury to impose costs upon a defendant whom it had acquitted was offensive to the due process clause because it was vague and standardless.[12] He then opined:
It is undisputed that there are no "legal standards that courts must enforce" in giving or not giving the manslaughter charge in a Pennsylvania murder indictment. Accordingly, we conclude that the powerful rationale of Giaccio commends a similar result in this case.
We believe that the safeguards of due process will be satisfied only when all defendants in Pennsylvania murder trials are given the same opportunity, upon request duly made, to have a jury return a verdict of voluntary manslaughter as well as first and second degree murder. To hold otherwise is to expose a defendant to the idiosyncracies of the trial judge to whom the case has been assigned, or the "whim or caprice" of a given judge on a given day.
503 F.2d at 346 (footnotes omitted). The purpose of the Matthews rule, then, is the avoidance of unseemly arbitrariness in the judicial process.
Relator, in his brief, after submitting that the pre-Matthews practice untowardly permitted a judge to limit the jury in the conclusions it was permitted to draw from certain facts, argues that the ratio decidendi of Matthews is to insure the "fairness of the trial" and that if Matthews' purpose is to avoid arbitrariness, as a necessary corollary it brings into question the "integrity of the fact-finding process." We disagree, believing that rather than enhancing the integrity of the fact-finding process, the effect of the new rule is to detract from it. We draw that conclusion because the effect of the new rule is to allow (all) juries to bring in manslaughter verdicts, regardless of the evidence, for reasons of sympathy or otherwise.
We find that the purpose of the Matthews rule is not to enhance the reliability of the truth-finding function. Such finding comports with Judge Aldisert's statement in Matthews:
We are dealing here only with those cases in which there is no evidence of passion or provocation. Therefore, our ruling does not go to the jury's ability to determine the presence vel non of the elements of the crime but rather to the jury's ability to exercise its "historically recognized mercy dispensing power." Commonwealth v. Jones, supra, 319 A.2d at 149 (Nix, J.).
503 F.2d at 348 (footnote omitted).
To recapitulate, the purpose of the Matthews rule is just what the court states it to be  the elimination of unseemly arbitrariness from the judicial process. Matthews' purpose is not to assure that guilt or innocence is reliably determined, Roberts v. Russell, supra, or to prevent *1368 convicting the innocent.[13] We have noted the formulation in Tehan v. Shott, supra, relating to the danger of convicting the innocent. But the practice of those Pennsylvania judges who gave the lesser offense charge when and only when there was some evidence  however slight  of the lesser crimes posed no real likelihood of convicting the innocent. A fortiori, the practice which must now be followed in Pennsylvania under Jones and Matthews, i. e. of requiring the charge in all cases whether or not there is evidence of passion or provocation, poses none either. This analysis helps to demonstrate that the purpose of Matthews relates not to the truth-finding function but rather to the matter of arbitrariness. Indeed, as we read Matthews, if the Pennsylvania rule had been uniform in the sense that a judge was not permitted to give a manslaughter charge where there was no evidence of passion or provocation, there would have been no due process problem.
We have surveyed the caselaw on retroactivity in an effort to distill therefrom the cases most similar to the case at bar. The result does not aid relator's cause. In a sense, the trial court, by refusing to charge on the lesser offense, was usurping the jury's absolute prerogative to determine the degree of guilt. In this respect, the purpose of the ruling is closely akin to the purpose of Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (right to trial by jury in serious state prosecutions) and Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) (right to trial by jury in serious criminal contempt proceedings), both of which were held to be wholly prospective in DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968).
Also apposite is North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) which established prophylactic due process limitations to guard against the possibility of vindictiveness in cases where a judge imposes a more severe sentence upon a defendant after a new trial. Pearce was held non-retroactive in Michigan v. Payne, 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973). Indeed, Payne is extremely relevant to our present inquiry not only because Pearce, like Matthews, is a due process holding, but also because of the affinity between a rule limiting judicial discretion in sentencing and a rule limiting judicial discretion in removing the possibility of lesser included verdicts from the jury's consideration.
Our conclusion that the truth-finding process is not implicated in Matthews is one which inveighs against retroactive application. A similar teaching has been gleaned from our survey of the caselaw. However, even if those anti-retroactivity signs were not so strong, we would be required under the circumstances to give consideration to the second and third factors of the Linkletter formula: reliance and effect on the administration of justice. Indeed, as Judge Aldisert noted in Matthews:
We also recognize with Mr. Justice Brennan that "`the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree.' Johnson v. New Jersey . . . [384 U.S. 719], at 728-729 [86 S.Ct. 1772 at 1778, 16 L.Ed.2d 882]. The extent to which a condemned practice infects the integrity of the truth-determining process at trial is a `question of probabilities.' 384 U.S., at 729 [86 S.Ct. at 1778]. Such probabilities must in turn be weighed against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice." Stovall v. *1369 Denno, supra, 388 U.S. at 298, 87 S. Ct. at 1970.
503 F.2d at 348.
We turn then to the factors of reliance and effect upon judicial administration.

IV. Reliance by Pennsylvania Law Enforcement Authorities on the Pre-Matthews Standards

In the case of Commonwealth v. Jones, Pa., 319 A.2d 142 (1974), the Pennsylvania Supreme Court, exercising its supervisory power, ruled that after the date of that opinion a defendant under indictment for murder would be entitled, upon request, to have the jury advised of its power to return a verdict of voluntary manslaughter. There is no doubt, however, (and relator does not contest this point) that the Commonwealth, prior to May 2, 1974, the date of the Jones opinion, the Commonwealth relied heavily upon the old rule. The Commonwealth, in its brief, cites no less than twenty-six Pennsylvania appellate decisions affirming and reaffirming the old rule, from Brown v. Commonwealth, 76 Pa. 319, 339 (1874) to the decision of the Pennsylvania Supreme Court in the instant case, Commonwealth v. Cannon, 453 Pa. 389, 309 A.2d 384 (1973). We need say no more on the point, since it is abundantly clear that the Commonwealth relied heavily on the old rule. Such reliance, of course, is another factor weighing against a retroactive application of the standards announced in Matthews.

V. Effect Upon the Administration of Justice of a Retroactive Application of the Matthews Standard

The Commonwealth's brief, augmented by the affidavit of Miss Glass mentioned above, sets forth the following information relative to the effect upon the administration of justice of a retroactive application of Matthews:
Considering only persons in prison or on parole supervision* as of October 15, 1974, 1640 persons are presently in custody in Pennsylvania on first or second degree murder convictions. Of these persons, 682 have exhausted their rights to a direct appeal.** Under Pennsylvania law, if a direct-appeal type retroactivity were decided upon, the ruling would apply to the remaining 956 prisoners and parolees by way of a nunc pro tunc direct appeal. Commonwealth v. Linde, 448 Pa. 230, 293 A.2d 62 (1972); Commonwealth v. Heard, 451 Pa. 125, 301 A.2d 870 (1973) (applying Mapp v. Ohio, supra (1961) to 1958 and 1956 convictions, respectively);*** Commonwealth v. Johnson, 451 Pa. 528, 304 A.2d 139 (1973) (applying Massiah v. United States, 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246] (1964) to a 1946 conviction).**** The nunc pro tunc direct appeal is a common device in Pennsylvania, often mandated by Douglas v. California, 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811] (1963), but which is virtually granted for the asking. During the years 1971  (November) 1974, 907 cases were listed pursuant to petitions filed under the Pennsylvania Post Conviction Hearing Act, Pa.Stat.Ann. tit. 19 § 1180 [1180-1] et seq. (1974). Of these, 195 petitioners were granted the right to file a direct appeal nunc pro tunc (21.5%). It is impossible to ascertain of the bulk of these petitions how many had already taken direct appeals, how many had pled guilty so *1370 that right to a direct appeal would be meaningless, and how many of the remainder even requested the right. However, of the 264 cases in which opinions were written during this period, 60 requested the right. Eighteen of these requests were meaningless, either because the petitioner had pled guilty or nolo contendere, or because he had already taken a counselled direct appeal. Of the 42 remaining requests, 35 were granted (58.3% of the total requests) and only 7 denied, where a clear waiver of appellate rights appeared from the record. It is thus clear that a Linkletter-type retroactively would threaten a far greater number of cases than the 294 presently pending on direct appeal.
* According to statistics provided by the Pennsylvania Bureau of Corrections and the Pennsylvania Board of Probation and Parole.
** According to dockets of the Pennsylvania Supreme Court.
*** Under the authority of Linkletter v. Walker, supra.
**** Under the authority of McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965).
Of course, regardless of the type of retroactivity chosen, only those cases in which the charge was requested and denied would be affected by the decision below. Manpower and time limitations have precluded examinations of more than a sampling of records. Nonetheless, the statistics thus compiled can give the Court some notion of the magnitude of cases affected. Of the 294 murder convictions presently pending before the Pennsylvania Supreme Court, 129 are Philadelphia County convictions listed for the November, 1974, argument session. Of these, 80 records were examined. (The remainder were guilty-pleas, non-jury trials or unavailable records). Of the 80 records examined, 12 defendants requested the charge and were refused. (In another 7 cases, the instruction was not given and a general exception was taken to the charge.) Thus, of the 107 available records, 11.2% of the total cases and 15% of the actual jury trials would be overturned as a result of the decision below. Additionally, jury trials were reviewed which are presently pending post-trial motions in Philadelphia County following convictions for first and second degree murder. 45 such records were available for examination. Of these, 5 would require new trials (11.5%).
Projecting these statistics into the data concerning the number of persons in custody, the operative figure is 11.2%, since it is not clear how many of the 1640 murder convictions were non-jury dispositions. On this basis, it would appear that approximately 184 persons would have to be re-tried under a rule of complete retroactivity. If a direct-appeal, or Linkletter-type retroactivity were decided upon, two categories of persons would be entitled to relief. First, of the 294 murder convictions presently pending in the Supreme Court of Pennsylvania, 11.2% or approximately 33 convictions would be overturned. In addition, another 21.5% of the persons in custody would be able to obtain a direct appeal nunc pro tunc or 353 persons. Of these, then, approximately 40 would obtain new trials. Thus a total of approximately 73 murder convictions would be upset under a Linkletter-type rule.
An alternative method of calculating the number of nunc pro tunc appeals which might be affected is to estimate that of the 956 persons in custody who have not exhausted direct appeal rights, 11.2% or 107 will be entitled to a new trial if they appeal. Assuming that these persons will request the right to a nunc pro tunc direct appeal, approximately 58.3% will be granted the right upon request, or 62 persons. Adding this to the 33 estimated new trials arising from the cases presently pending before the Pennsylvania Supreme Court, an estimated 95 convictions would be overturned.[14]
As we have noted above, these facts set forth in the Commonwealth's brief are uncontested and we accept them. Deferring for the moment the question of the scope of a potential retroactivity *1371 holding, we are satisfied that any type of retroactive application of Matthews would have a substantially adverse effect upon the administration of justice in Pennsylvania. This conclusion follows from: (1) the substantial number of convictions which would, under any theory, have to be overturned;[15] (2) the (concomitant) substantial number of retrials which retroactive application would require; and (3) the fact that in a retrial situation the Commonwealth will face serious problems of unavailable witnesses and witnesses with faded memories due to passage of time, making it difficult to obtain a conviction even though the facts may warrant one. The problem is exacerbated by the age of many of the cases which would be affected by a retrospective ruling. Indeed, even cases on direct appeal might be of considerable vintage in view of the liberality with which the Pennsylvania Supreme Court allows nunc pro tunc appeals.

VI. Conclusion; Scope of our Non-Retroactivity Holding

We have concluded that the Matthews rule does not implicate the integrity of the fact-finding process, that the Commonwealth relied heavily upon the prior rule, and that retroactive application of the Matthews standard would have an adverse effect upon the administration of justice. Applying the general principles recited above, these conclusions require us to hold that the decision in Matthews should not be retroactively applied to relator.
The holding just recited, while favorable to the Commonwealth and dispositive of the issues before us, falls short of the mark set by the Commonwealth in the case. For the Commonwealth would have us go further and hold that the Matthews rule should be applied wholly prospectively, (i. e., only to trials begun after August 18, 1974, the date on which Matthews was decided) so that it would be unavailable not only to convicted defendants, such as relator, asserting collateral attacks, but also to convicted defendants pressing direct appeals, whether timely filed and still pending before the Pennsylvania Supreme Court or of the nunc pro tunc variety. (Presumably, the Commonwealth would be equally happy with a decision applying Matthews to trials taking place after May 2, 1974, the date on which Commonwealth v. Jones, supra, was decided, for the result would be the same). The proposition that, having decided that Matthews is not fully retroactive and that it does not apply to the case of relator who is collaterally attacking a final judgment of conviction, we should go further and determine whether Matthews applies to cases on direct appeal merits reflection.
The approach taken by the Supreme Court when confronted with the question of the scope of a given holding of retroactivity or prospectivity is summarized by Mr. Justice White in Williams v. United States, supra, as follows:
In Linkletter v. Walker, 381 U.S. 618 [85 S.Ct. 1731, 14 L.Ed.2d 601] (1965), we declined to give complete retroactive effect to the exclusionary rule of Mapp v. Ohio, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081] (1961). Relying on prior cases, we firmly rejected the idea that all new interpretations of the Constitution must be considered always to have been the law and that prior constructions to the contrary must always be ignored. Since that time, we have held to the course that there is no inflexible constitutional rule requiring in all circumstances either absolute retroactivity or complete prospectivity for decisions construing the broad language *1372 of the Bill of Rights. Nor have we accepted as a dividing line the suggested distinction between cases on direct review and those arising on collateral attack. Rather we have proceeded to "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Linkletter, supra, 381 U.S. at 629, 85 S.Ct. at 1738.
401 U.S. at 651-52, 91 S.Ct. at 1151 (footnotes omitted).
The Supreme Court has often decreed that a new rule shall be totally retroactive or wholly prospective or has adopted some middle ground. One approach which the Court has used is the "applicable - on - direct - appeal" approach.[16] Where balancing the Linkletter factors dictates a policy of non-retroactivity, however, the Court has more frequently adopted a date of trial[17] or date of occurrence approach.[18] Such an essentially wholly prospective approach was first used in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), and has been frequently followed since that time. See, e. g., Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967);[19]DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968);[20]Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968);[21]Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed. 2d 248 (1969);[22]Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971);[23]Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971);[24]Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L. Ed.2d 202 (1972).[25] (See attached appendix for a more comprehensive review).
*1373 Although some of the cases in which the Supreme Court has fixed the effective date of its new rule have been on direct appeal from the highest court of a state, others have come up through the federal system on collateral attack. At first blush, a holding in a collateral attack case that a given newly announced principle should be retroactively applicable only to cases on direct appeal to a state court might appear to be beyond the purview of the case or controversy before the court (except perhaps insofar as the Supreme Court might properly anticipate direct appeals from the highest court of a state raising the issue). On the other hand, it may well be that a declaration as to the scope of prospectivity or retrospectivity of a given ruling is properly a part of constitutional adjudication when addressing the question in a case properly before the court of the application of a given newly announced criminal procedural rule. It is apparently for this reason that the Third Circuit has, from time to time, defined the scope of such a rule. For instance, in United States ex rel. Hughes v. Rundle, 419 F.2d 116 (3d Cir. 1969), the court held Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L. Ed.2d 274 (1969) to be wholly prospective. It has also applied the on-direct-appeal approach.[26]
Judge Aldisert expressed the view in his opinion in Matthews that while the Matthews rule should not be accorded total retroactivity, it should be applied on direct appeal, 503 F.2d at 348. As we noted above, a majority of the court preferred to defer decision on the retroactivity issue until a case raising it was before the court. In one sense, this may be such a case. However, this case does not squarely raise the question of the applicability of Matthews to direct appeals before the Pennsylvania Supreme Court. Such a case would arise if the Pennsylvania Supreme Court refused to apply Matthews in a direct appeal context and a habeas corpus proceeding was thereupon filed in this court. While the notion articulated above, that constitutional adjudication properly comprehends a declaration of the scope of prospectivity or retroactivity of a given newly announced procedural rule, may be persuasive when the adjudicating body is the United States Supreme Court or perhaps even the Court of Appeals, we deem it inapplicable to our role in this case. We are particularly impelled to reach this conclusion by the vexatious problem of nunc pro tunc appeals in Pennsylvania, being hesitant to express a view on how to treat such appeals upon a record in which no direct appeal or nunc pro tunc appeal litigant has been heard. (Relator had no interest in refining the case to that degree, for the distinction did not effect him.)
Hopefully, our analysis will be of some help to the court which ultimately decides the "on-direct-appeal" question; certainly our analysis, if correct, points strongly in the direction of prospectivity. However, we deem it wiser to limit our holding to the collateral attack case squarely before us, and, accordingly, enter the following Order.

ORDER
And now, this 12th day of June 1975;
(1) after independent consideration of relator's petition for a writ of habeas corpus and of the Commonwealth's answer thereto;
(2) after an independent review of the Report and Recommendation of the United States Magistrate; and
(3) after hearing;
AND, in consideration of our Memorandum and Order dated October 2, 1974, and of the foregoing Opinion, IT IS ORDERED that relator's petition for a writ of habeas corpus is hereby denied. There is probable cause for appeal.

*1374
SOME RECENT RETROACTIVITY DECISIONS OF THE UNITED STATES
 SUPREME COURT AND THE THIRD CIRCUIT COURT OF
 APPEALS IN CRIMINAL MATTERS
RETROACTIVITY DECISION CASE(S) APPLIED NOTE
Doughty v. Maxwell, 376 U.S. Gideon v. Wainwright, 372 U.S. fully retroactive
202, 84 S.Ct. 702, 11 L.Ed.2d 335, 83 S.Ct. 792, 9 L.Ed.2d
650 (1964) 799 (1963) (right to counsel)
Smith v. Crouse, 378 U.S. 584, Douglas v. California, 372 U.S. fully retroactive
84 S.Ct. 1929, 12 L.Ed.2d 1039 353, 83 S.Ct. 814, 9 L.Ed.2d
(1964) 811 (1963) (right to counsel on
 appeal)
Linkletter v. Walker, 381 U.S. Mapp v. Ohio, 367 U.S. 643, 81 applicable on direct appeal but
618, 85 S.Ct. 1731, 14 L.Ed.2d S.Ct. 1684, 6 L.Ed.2d 1081 not collateral attack (hereinafter
601 (1965) (1961) (exclusionary rule applicable referred to as "direct appeal")
 to states) (search and
 seizure)
Tehan v. United States ex rel. Griffin v. California, 380 U.S. held non-retroactive
Shott, 382 U.S. 406, 86 S.Ct. 609, 85 S.Ct. 1229, 14 L.Ed.
459, 15 L.Ed.2d 453 (1966) 2d 106 (1965) (prohibiting adverse
 comment on the refusal of
 accused to testify) Court found the purpose of
 Griffin to be preservation of the
 integrity of the judicial system
Johnson v. New Jersey, 384 U.S. Miranda v. Arizona, 384 U.S. applicable only to trials begun on
719, 86 S.Ct. 1772, 16 L.Ed.2d 436, 86 S.Ct. 1602, 16 L.Ed.2d or after the dates of decision in
882 (1966) 694 (1966); and Escobedo v. Escobedo and Miranda (hereinafter
 Illinois, 378 U.S. 478, 84 S.Ct. referred to as "date of
 1758, 12 L.Ed.2d 977 (1964) trial")
 (warnings and right to counsel
 during custodial interrogation)
Stovall v. Denno, 388 U.S. 293, United States v. Wade, 388 U.S. applicable only to line-ups occurring
87 S.Ct. 1967, 18 L.Ed.2d 1199 218, 87 S.Ct. 1926, 18 L.Ed.2d after the date of decision
(1967) 1149 (1967) (right to counsel at in Wade (hereinafter referred to
 line-ups) as "date of occurrence")
Witherspoon v. Illinois, 391 U.S. same case (voir dire of potential fully retroactive
510, 88 S.Ct. 1770, 20 L.Ed.2d jurors concerning the death penalty)
776 (1968) Court found the holding fundamental
 to the reliability of the
 fact-finding process, 391 U.S. at
 p. 523, n. 22, 88 S.Ct. 1770
Roberts v. Russell, 392 U.S. 293, Bruton v. United States, 391 U. fully retroactive[*]
88 S.Ct. 1921, 20 L.Ed.2d 1100 S. 123, 88 S.Ct. 1620, 20 L.
(1968) Ed.2d 476 (1968) (right to confrontation)
DeStefano v. Woods, 392 U.S. Duncan v. Louisiana, 391 U.S. date of trial
631, 88 S.Ct. 2093, 20 L.Ed.2d 145, 88 S.Ct. 1444, 20 L.Ed.2d
1308 (1968) 491 (1968); and Bloom v. Illinois,
 391 U.S. 194, 88 S.Ct.
 1477, 20 L.Ed.2d 522 (1968)
 (right to trial by jury)
McConnell v. Rhay, 393 U.S. 2, Mempa v. Rhay, 389 U.S. 128, fully retroactive[*]
89 S.Ct. 32, 21 L.Ed.2d 2 (1968) 88 S.Ct. 254, 19 L.Ed.2d 336
 (1967) (right to counsel at sentencing)
Arsenault v. Massachusetts, 393 White v. Maryland, 373 U.S. 59, fully retroactive
U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 83 S.Ct. 1050, 10 L.Ed.2d 193
5 (1968) (1963) (right to counsel at preliminary
 hearing where a plea
 is entered)
Fuller v. Alaska, 393 U.S. 80, 89 Lee v. Florida, 392 U.S. 378, date of trial
S.Ct. 61, 21 L.Ed.2d 212 (1968) 88 S.Ct. 2096, 20 L.Ed.2d 1166
 (1968) (illegal wiretap evidence
 inadmissible in state court trials)

*1375
RETROACTIVITY DECISION CASE(S) APPLIED NOTE
Berger v. California, 393 U.S. Barber v. Page, 390 U.S. 719, fully retroactive[*]
314, 89 S.Ct. 540, 21 L.Ed.2d 88 S.Ct. 1318, 20 L.Ed.2d 255
508 (1969) (1968) (right to confrontation) Court found Barber so foreshadowed
 by Pointer v. Texas as
 to negate justifiable reliance by
 law enforcement authorities
Desist v. United States, 394 U.S. Katz v. United States, 389 U.S. date of occurrence
244, 89 S.Ct. 1030, 22 L.Ed.2d 347, 88 S.Ct. 507, 19 L.Ed.2d
248 (1969) 576 (1967) (electronic eavesdropping
 constitutes "search")
Halliday v. United States, 394 McCarthy v. United States, 394 date of trial
U.S. 831, 89 S.Ct. 1498, 23 L. U.S. 459, 89 S.Ct. 1166, 22 L.
Ed.2d 16 (1969) Ed.2d 418 (1969) (guilty plea
 colloquy on record by trial judge)
Williams v. United States, 401 Chimel v. California, 395 U.S. date of occurrence
U.S. 646, 91 S.Ct. 1148, 28 L. 752, 89 S.Ct. 2034, 23 L.Ed.2d
Ed.2d 388 (1971) 685 (1969) (scope of search incident
 to arrest)
Mackey v. United States, 401 U. Marchetti v. United States, 390 date of trial
S. 667, 91 S.Ct. 1160, 28 L.Ed. U.S. 39, 88 S.Ct. 697, 19 L.Ed.
2d 404 (1971) 2d 889 (1968) and Grosso v.
 United States, 390 U.S. 62, 88
 S.Ct. 709, 19 L.Ed.2d 906
 (1968) (Fifth Amendment a valid
 defense to charge of failure to
 register and pay gambling tax)
United States v. United States Marchetti v. United States, 390 fully retroactive as Marchetti and
Coin and Currency, 401 U.S. 715, U.S. 39, 88 S.Ct. 697, 19 L.Ed. Grosso apply to forfeiture proceedings
91 S.Ct. 1041, 28 L.Ed.2d 434 2d 889 (1968) and Grosso v. under 26 U.S.C. § 7302
(1971) United States, 390 U.S. 62, 88
 S.Ct. 709, 19 L.Ed.2d 906
 (1968)
Adams v. Illinois, 405 U.S. 278, Coleman v. Alabama, 399 U.S. 1, date of occurrence
92 S.Ct. 916, 31 L.Ed.2d 202 90 S.Ct. 1999, 26 L.Ed.2d 387
(1972) (1970) (absolute right to counsel
 at preliminary hearing)
Ivan v. City of New York, 407 In re Winship, 397 U.S. 358, 90 fully retroactive
U.S. 203, 92 S.Ct. 1951, 32 L. S.Ct. 1068, 25 L.Ed.2d 368
Ed.2d 659 (1972) (1970) (requiring proof beyond a Court found that the purpose of
 reasonable doubt at adjudicatory Winship was to overcome an
 stage when juvenile is charged aspect of a criminal trial that
 with act that would constitute substantially impairs the truth-finding
 a crime if committed by an adult) function
Robinson v. Neil, 409 U.S. 505, Waller v. Florida, 397 U.S. 387, fully retroactive
93 S.Ct. 876, 35 L.Ed.2d 29 90 S.Ct. 1184, 25 L.Ed.2d 435
(1973) (1970) (double jeopardy) Court draws the distinction between
 a decision affecting evidence
 or mode of trial and one
 whose effect is to bar prosecution
Michigan v. Payne, 412 U.S. 47, North Carolina v. Pearce, 395 date of sentence
93 S.Ct. 1966, 36 L.Ed.2d 736 U.S. 711, 89 S.Ct. 2072, 23 L.
(1973) Ed.2d 656 (1969) (limiting circumstances
 under which increased
 sentence may be imposed on retrial
 following appellate reversal
 of original conviction)
Gosa v. Mayden, 413 U.S. 665, O'Callahan v. Parker, 395 U.S. non-retroactive
93 S.Ct. 2926, 37 L.Ed.2d 873 258, 89 S.Ct. 1683, 23 L.Ed.2d
(1973) 291 (1969) (servicemen entitled
 to civilian indictment and trial
 for non-service connected offenses)

*1376
RETROACTIVITY DECISION CASE(S) APPLIED NOTE
Hamling v. United States, 418 U. Miller v. California, 413 U.S. 15, direct appeal, but only where the
S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 93 S.Ct. 2607, 37 L.Ed.2d 419 application of prior standard was
590 (1974) and Jenkins v. (1973) (defining the standards to damaging to the accused
Georgia, 418 U.S. 153, 94 S.Ct. be employed in determining
2750, 41 L.Ed.2d 642 (1974) whether conduct can constitutionally
 be punished under obscenity
 laws)
Daniel v. Louisiana, 420 U.S. 31, Taylor v. Louisiana, 419 U.S. 522, not applicable to convictions obtained
95 S.Ct. 704, 42 L.Ed.2d 790 95 S.Ct. 692, 42 L.Ed.2d 690 by juries impanelled prior
(1975) (1975) (Constitution commands to the date of the decision in
 that petit juries must be selected Taylor
 from a source fairly representative
 of the community)
United States ex rel. Hughes v. Boykin v. Alabama, 395 U.S. 238, non-retroactive
Rundle, 419 F.2d 116 (3d Cir. 89 S.Ct. 1709, 23 L.Ed.2d 274
1969) (1969) (reversible error for trial
 court to accept guilty plea without
 affirmative showing on the
 record that plea was made intelligently
 and voluntarily)
United States v. Zirpolo, 450 F.2d same case (reversal of conviction applicable only to cases in which
424 (3d Cir. 1971) due to invalidation of a grand proper challenges to the grand
 jury selection procedure utilizing jury selection procedure were
 a two-to-one ratio based on sex) made and on which trials have
 not been had or, if trials have
 been completed are on direct appeal
 on date of decision in Zirpolo
Brown v. United States, 508 F.2d United States v. Greenwell, 19 non-retroactive
618 (3d Cir. 1975) U.S.C. M.A. 460 (1970) (certain
 courts-martial were invalid because
 of unlawful delegation of
 convening authority)

NOTES
[1] The delay in hearing and adjudicating this matter resulted from our decision to await the outcome of the Commonwealth's petition for certiorari to the United States Supreme Court in the Matthews case.
[2] Relator was also charged with assault with intent to kill his wife (October Term 1967, No. 1266). He was convicted on that charge and was sentenced to three and one-half years imprisonment to run concurrently with the life sentence. However, he was found not guilty of attempt with intent to kill as charged in Indictment Number 1265 of October Term 1967.
[3] The majority, noting that there was no indication in the record that Cannon was enraged and no evidence of adequate provocation, held that refusal to instruct the jury on manslaughter was not error. However, three judges dissented on the ground that relator was entitled to a jury instruction on the crime of voluntary manslaughter.
[4] See our Memorandum and Order dated October 2, 1974. The claims rejected were that the trial court erred: (1) in failing to suppress relator's incriminating statement; (2) in refusing a mistrial when the jury was apprised of relator's stay at Glen Mills School; (3) in charging the jury on the definition of reasonable doubt; (4) in charging the jury that the intent to kill could not be rebutted by relator's own testimony; and (5) in failing to submit to the jury the question of voluntariness of relator's statement.
[5] Both Richard H. Elliott, Esquire and Bonnie B. Leadbetter, Esquire filed excellent briefs and presented exceptionally fine oral arguments.
[6] United States ex rel. White v. Johnson, Civil Action No. 74-1162 (E.D.Pa., filed May 7, 1974).
[7] In Linkletter, the Court refused to apply the Fourth Amendment exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1951) retroactively.
[8] In Stovall, the Court held that the right to counsel at line-ups afforded in Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), was applicable only to line-ups occurring after the date of the decision in Wade.
[9] Desist accorded prospective application to Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), which excluded fruits of non-authorized electronic surveillance.
[10] The Court in Zirpolo refused to extend full retroactivity to a holding invalidating federal grand jury investigating procedures in the District of New Jersey.
[11] In the present case, as in Matthews, counsel concedes that there was no evidence of passion or provocation, and, as we have noted above, the trial judge and the Pennsylvania Supreme Court so found. (see note 3, supra)
[12] Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).
[13] We cannot gainsay that perhaps some juries might convict rather than acquit because the manslaughter option is not open to them, but the reverse would appear equally true. In any event, such speculation does not affect the outcome.
[14] Commonwealth's brief, pp. 5-7.
[15] The Commonwealth's affidavit does not represent that its statistics are complete for the entire Commonwealth. However, the data set forth demonstrates the significant number of cases which would be affected by retrospective application of Matthews in three categories: (a) those beyond direct or nunc pro tunc appeal; (b) those on direct appeal; and (c) those that are the subject of potential nunc pro tunc appeal. Presumably, complete statistics would demonstrate a still greater problem.
[16] This approach was used, for instance, in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) and Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Mr. Justice Harlan was the strongest exponent of the view that new constitutional standards, otherwise held prospective only, should apply to cases on direct review as a function of the duty of a court of law to resolve issues on direct review and to do so by applying the law as it is at the time of decision. See Mr. Justice Harlan's concurring opinion in Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) and his dissenting opinion in Williams v. United States, 401 U. S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388, at 401 U.S. 675, 91 S.Ct. 1148 (1971).
[17] Whereby the new holding was applied only to trials commencing on or after the date it was handed down.
[18] Whereby the new holding operated to exclude only evidence obtained on or after the date of decision.
[19] Holding United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) applicable only to line-ups occurring after the date of the decision in Wade.
[20] Holding Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) and Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) wholly prospective (i.e., applicable only to trials beginning after the dates of the decisions in Duncan and Bloom).
[21] Holding Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968) wholly prospective (i.e., applicable only to trials after the date of the decision in Lee).
[22] Holding Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) wholly prospective (i.e., applicable only to cases in which the prosecution seeks to introduce the fruits of electronic surveillance conducted after the date of the decision in Katz).
[23] Holding Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) wholly prospective (i.e., applicable only to searches postdating the decision in Chimel).
[24] Holding Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) wholly prospective (i. e., applicable only to trials occurring after the date of the decisions in Marchetti and Grosso).
[25] Holding Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) wholly prospective (i.e., not applicable to preliminary hearings conducted prior to the date of the decision in Coleman).
[26] United States v. Zirpolo, 450 F.2d 424 (3d Cir. 1971).
[*] In United States Coin and Currency, supra, these cases were categorized as dealing with the retroactivity of "new rules which substantially improve the fact-finding process at trial" and which overturned prior practices incurring a "significant chance that innocent men had been wrongfully punished in the past." Id. 401 U.S. at 723, n. 12, 91 S.Ct. at 1046.