Commonwealth *v.* Cockfield, Appellant.

Argued May 2, 1968.   Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Cecil B. Moore,* for appellant.

*Paul R. Michel,* Assistant District Attorney, with him *Benjamin H. Levintow* and *Michael J. Rotko,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 3, 1968:

On April 7, 1960, Ida Quattlebaum and her two young children lost their lives from carbon monoxide poisoning and severe burns suffered in a fire which substantially damaged their dwelling house in the City of Philadelphia. Charles Cockfield was arrested for deliberately setting the fire. On March 31, 1964, after a jury trial, he was convicted of arson and three separate counts of murder. On the murder convictions, the jury fixed the penalty at life imprisonment. Post-trial motions were dismissed and sentences imposed on the murder convictions as the jury directed. An appeal from these judgments is now before us.

We conclude that Cockfield was denied due process of law, because evidence admitted, over objection, at trial was obtained by unlawful searches and seizure and should have been excluded.[1] Consequently, we reverse and order a new trial.

---

[1] In fairness to the trial court, we must, at least in part, accept the blame for the error. Before trial the lower court sustained a motion to suppress the evidence involved, but on appeal from that order by the Commonwealth, we reversed. *Commonwealth v. Cockfield,* 411 Pa. 71, 190 A. 2d 898 (1963). Therein we incorrectly ruled that, in determining whether the constitutional prohibition against unreasonable searches and seizures has been violated, a state court is free to apply its own, rather than

The existence of the fire was discovered at about 2:30 a.m. by two police officers cruising in a police car in the neighborhood. Firemen were summoned and arrived shortly, but the intensity of the fire prevented immediate entry into the house. When entry was gained, the bodies of the three dead victims were found. There was a strong odor of gasoline or kerosene on the premises.

Two police detectives and a police lieutenant arrived on the scene at about 3:40 a.m. They were advised by fire department officials that the fire was probably of incendiary origin. They also learned through questioning a neighbor that Mrs. Quattlebaum had been "keeping company" with a tall slim Negro called "Bill," later ascertained to be Cockfield. Lately the relationship had become strained and, on an occasion about a month before the fire, "Bill" had assaulted Mrs. Quattlebaum, threatening to cut her throat with a knife. They also were informed that "Bill" owned or operated "a 1953 or 1954 Dodge or Plymouth car that was supposedly bluish at the top and dirty white or gray at the bottom."

Shortly after 5 a.m., these police detectives, joined by another police officer named Merriweather and a lieutenant of the fire department attached to the Fire Marshal's office, proceeded to the neighborhood where "Bill" was thought to reside. A resident of the neighborhood directed them to a specific address where "Bill" lived. After ringing the doorbell and knocking on the door without receiving a response, the officers decided to walk through the area to see if they could find an automobile matching the description given them. About three-fourths of a block away, they came

federal standards. On this point the United States Supreme Court has now ruled otherwise. *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684 (1961) ; *Ker v. California*, 374 U.S. 23, 83 S. Ct. 1623 (1963).

upon an unoccupied automobile parked in the street which the officers thought "possibly was the car we were hunting for." The hood was quite warm, indicating that the motor had recently been operated. The license number was taken and Officer Merriweather was dispatched to police headquarters to ascertain the identity of the registered owner. Within minutes, Merriweather returned to the scene without the registration information, but with a sister of Mrs. Quattlebaum who identified the automobile as "Bill's." The unlocked trunk was then opened. A two gallon empty can marked "Gulf" and a roll of charred toilet paper were observed therein. The interior of the trunk also smelled strongly of gasoline.

The officers kept the automobile and "Bill's" residence under surveillance until about 8 a.m. When "Bill" failed to appear, the automobile was taken to a nearby police station where it was parked and disabled by removing the distributor and disconnecting certain electrical wiring.

Later that day, Cockfield discovered his automobile in front of the police station. Upon inquiring, Cockfield was informed by an officer on duty that he did not understand why the car was in the possession of the police, and that it was all right to take it. Cockfield then purchased and installed the necessary parts and drove the car away.

On April 8, 1960, at about 1 a.m., Cockfield was taken into custody by the police and questioned concerning the fire. On the early morning of April 9th, he signed an incriminating statement. Shortly thereafter, his automobile was again sought out, taken into custody by the police and removed to police headquarters. At 10 a.m., Cockfield was arraigned before a committing magistrate on the criminal charges involved. At 11:30 a.m., the unlocked trunk of the au-

tomobile again was opened and the gasoline can and charred toilet paper were seized. This search and seizure and the original search of the automobile on April 7th were conducted without a search warrant. The seized evidence was used at trial by the Commonwealth.

Whenever practicable, the police must obtain advance judicial approval of searches and seizures through warrant procedure, and the failure to comply with the warrant procedure "can only be excused by exigent circumstances." *Terry v. Ohio,* 392 U.S. 1, 20, 88 S. Ct. 1868, 1879 (1968).

One permissible exception from the warrant procedure exists for searches which are incident to a lawful arrest. A search incident to a lawful arrest and without a warrant is justified in part by the need to prevent the disappearance or destruction of evidence. *Preston v. United States,* 376 U.S. 364, 84 S. Ct. 881 (1964). Thus, such a search may extend to things under the accused's immediate control, such as an automobile, *Carroll v. United States,* 267 U.S. 132, 45 S. Ct. 280 (1925), but only if the search is substantially contemporaneous with the arrest, *Preston v. United States,* supra; *James v. Louisiana,* 382 U.S. 36, 86 S. Ct. 151 (1965) (per curiam).

It is clear in this case that neither the original search of the trunk of the automobile, when the challenged evidence was first discovered, nor the subsequent search and seizure[2] of the evidence were contemporaneous with and confined to the immediate vicinity of Cockfield's arrest. Thus, the search and seizure were not incident to the arrest. In its brief, the Com-

---

[2] The fact that the trunk was unlocked does not render the examination or intrusion thereof something less than a search. The use of force is not an indispensable element of a search. Cf. *Sabbath v. United States,* 391 U.S. 585, 88 S. Ct. 1755 (1968).

monwealth at least impliedly concedes this, but still maintains that the searches and seizure were made with probable cause and were reasonable under the circumstances.

While it is true that the United States Supreme Court has upheld a warrantless search of an automobile which was not incident to an arrest, *Cooper v. California,* 386 U.S. 58, 87 S. Ct. 788 (1967), this was so because a state statute required that the automobile be impounded by the police, pending the outcome of forfeiture proceedings, as evidence of the crime for which the owner was lawfully arrested. In those circumstances, the search of an automobile already lawfully seized was reasonable.

The unique justification for the warrantless search in *Cooper v. California,* is not present here. Nor do we see any other justification making this warrantless search reasonable. Certainly a search without a warrant is not reasonable simply because the officers have probable cause to believe that incriminating evidence will be disclosed. *Jones v. United States,* 357 U.S. 493, 78 S. Ct. 1253 (1958). If this constituted "exigent circumstances," it would be almost impossible to think of a case in which a warrant would be necessary. *Chapman v. United States,* 365 U.S. 610, 81 S. Ct. 776 (1961). And certainly an automobile is not *per se* unprotected by the warrant procedure of the Fourth Amendment. Although it *sometimes* may be reasonable to search a movable vehicle without a warrant, the movability of the area to be searched is not alone a sufficiently "exigent circumstance" to justify a warrantless search. Other circumstances, for instance a serious possibility that the movable vehicle may, in fact, be moved before a warrant can be obtained, are necessary. In this case, the possibility that Cockfield's car would be moved is purely conjectural. When the car was first searched, he was nowhere to be seen.

When the car was next searched, he was actually in the custody of the police. We are unpersuaded, in these facts, that "exigent circumstances" justified a warrantless search.

Since the search was not incident to an arrest and since it does not appear that other "exigent circumstances" made the warrantless search reasonable, the evidence seized should have been excluded.

Reversed.

Mr. Chief Justice BELL and Mr. Justice MUSMANNO dissented.