Commonwealth *v.* Linde, Appellant.

Argued March 14, 1972. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Bernard S. Shire,* with him *Shire, Bergstein and Bialon,* for appellant.

*Henry A. Martin,* Assistant District Attorney, with him *John N. Scales,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, June 28, 1972:

This is a direct appeal from the judgment of sentence of life imprisonment imposed on Elmer Carl Linde following his conviction by a jury of murder in the first degree.[1] We conclude the judgment must be set aside because of the use at trial of evidence which had been obtained by an unlawful search and seizure.

The essential facts are these:

Linde and Ruth Nolan became romantically involved but the relationship ran into stormy days. About 1:30 A.M., on June 13, 1958, after having con-

---

[1] Linde was convicted on September 6, 1958, and has been before this Court in collateral attacks on three prior occasions. See 432 Pa. 324, 248 A. 2d 235 (1968) ; 420 Pa. 31, 215 A. 2d 628 (1966) ; 416 Pa. 331, 206 A. 2d 288 (1965). On November 10, 1971, we permitted an appeal to be filed as if timely filed pursuant to an order of the United States District Court, Western District of Pennsylvania.    F. Supp.    (1971).

sumed a quantity of alcohol and stealing a gun from a neighboring roomer in his rooming house, Linde went to Ruth Nolan's residence and shot her five times. He then shot himself. She died instantly.

When the police arrived on the scene, Linde's transferal to a hospital by ambulance was arranged. The police subsequently sought and located Linde's automobile parked at a service station about 550 yards from the Nolan home. A police officer was dispatched to the hospital, and he obtained the keys to the vehicle from the hospital custodian. When the car was unlocked and searched, the police found a notebook containing five pages of handwritten thoughts. On June 23rd the police presented these writings to Linde in the hospital and, after acknowledging he had written them, he initialed each page. The writings were of a most incriminating nature. One note as being written at 8:30 p.m. on June 12th told of Linde stealing the gun and also of his intention to kill Ruth Nolan. The writings were introduced against Linde at trial.

In *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A. 2d 727 (1972), we surveyed the principles of law controlling warrantless searches of vehicles[2] and stated: "It is now fundamental that if the property involved is the fruit of an unlawful search, the evidentiary use thereof is constitutionally impermissible and violates

[2] It should be noted that although the search occurred in 1958 and therefore pre-dated the decision of *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684 (1961), which applied the federal exclusionary rule of the Fourth Amendment to the state courts, the case of *Linkletter v. Walker*, 381 U.S. 618, 85 S. Ct. 1731 (1965) held the *Mapp* ruling applicable to any judgment not finalized, a condition that can be said to exist only when availability of direct appeal has been exhausted, prior to June 19, 1961. See *Commonwealth v. Ellsworth*, 421 Pa. 169, 218 A. 2d 249 (1966). Since an appeal nunc pro tunc is a direct attack on the judgment of sentence, appellant gets the benefit of the *Mapp* ruling and its progeny.

due process of law. See Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684 (1961); Commonwealth v. Pearson, 427 Pa. 45, 233 A. 2d 552 (1967). Moreover, it is very clear that only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a warrantless search. See Coolidge v. New Hampshire, 400 U.S. 814, 91 S. Ct. 2022 (1971); Chambers v. Maroney, 399 U.S. 42, 90 S. Ct. 1975 (1970)." Id. at 103, 288 A. 2d at 734. Thus, a dual inquiry, both parts requiring affirmative answers must be made: first, whether there existed probable cause to search; and secondly, whether exigent circumstances can be found to excuse the obtaining of a warrant. Even assuming arguendo, the police had probable cause to *search* Linde's vehicle, absence of exigent circumstances makes the search executed contrary to constitutional dictates.

The record discloses that from the moment the vehicle was located until the search ensued, it was kept under constant police guard. At the time of the search, it was locked, unoccupied and the police were in possession of the keys. Linde himself was in the hospital undergoing emergency surgery, and there was no danger he would move it. Thus, no good reason existed why a search warrant could not be obtained. The "exigent circumstances" required for a warrantless search were clearly absent.

*Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975 (1970), is inapposite. *Chambers* concerned the stopping of a *moving* vehicle for which the police had probable cause both to search and to arrest the occupants on the spot. The Court held the fact that the police opted to arrest the occupants and transport the vehicle to the police station before conducting the search was merely a matter of convenience and did not vitiate the authority to conduct a warrantless search.

Nor can the search here be justified as one incident to a lawful arrest for Linde was not arrested until eleven days later. Moreover, such a search to be valid must be in the immediate vicinity of the arrest. Cf. *Coolidge v. New Hampshire,* supra, and *Shipley v. California,* 395 U.S. 818, 89 S. Ct. 2053 (1969).

Finally, we are not persuaded that permitting the introduction of this evidence constituted harmless error as the Commonwealth argues.

It is true the Commonwealth produced a substantial amount of evidence at trial linking Linde to the death of Ruth Nolan, but the proof that the killing was executed with the premeditation necessary to support a finding of first degree murder was in large part established by the evidence obtained through the unconstitutional search. Additionally, several witnesses testified at trial without contradiction that Linde was intoxicated at the time of the killing. The only persuasive evidence that he had the requisite mental state to be guilty of murder in the first degree, rather than murder in the second degree was the record of his plans and intent to kill Ruth Nolan, as written in the notebook.

Judgment reversed and a new trial is ordered.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.