Commonwealth *v.* Heard, Appellant.

Submitted January 10, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John W. Packel,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Mark Sendrow* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, March 16, 1973:

The appellant, Earl Heard, in 1956 was convicted by a jury of aggravated robbery and aggravated assault and battery (No. 226 and No. 227). Immediately thereafter, the appellant pleaded guilty to separate counts of aggravated robbery and aggravated assault and battery (No. 228 and No. 229). The charges to which the appellant pleaded guilty involved a separate and distinct episode from that for which the appellant was tried and found guilty by a jury. Appellant received concurrent terms of five to ten years on the two counts of aggravated robbery. Sentence was suspended on the two counts of aggravated assault and battery. No appeal was taken from these judgments.

In 1969, appellant sought PCHA relief claiming that he had been denied his appeal rights. The petition also raised other substantive issues. Appellant established that he was entitled to a direct appeal and the trial court therefore considered his PCHA petition as constituting post-trial motions, but denied relief on the substantive claims raised in the post-trial motions. We thus have before us appellant's direct appeal.

One of the issues raised by the appellant is a claim that evidence introduced during his jury trial (No. 226 and No. 227) was obtained unconstitutionally in that the evidence was the fruit of an illegal search of his automobile. If the appellant is correct there was a violation of his rights under *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961). Such a violation would entitle the appellant to relief on direct appeal. *Commonwealth v. Linde,* 448 Pa. 230, 293 A. 2d 62 (1972).

On the day of appellant's arrest, the police received information from the victim that her purse had been snatched and she saw the man who took it get into an automobile and drive away. The police were given a

description of the automobile and the license plate number. A check of the records indicated that the automobile was registered in the name of the appellant. The police then obtained an arrest warrant for the appellant. They did not obtain a search warrant for either the appellant's house or his automobile even though they had the opportunity to do so when the arrest warrant was secured.

The police then proceeded to the appellant's home, arrested appellant and took him to the station. *After* appellant's arrest and his transfer to the station, officers returned, without warrants, and conducted a search of appellant's home. No evidence was discovered. The officers then proceeded to search the appellant's automobile which was parked outside the home. No warrant was obtained for either of these searches. In the automobile the police found two watchbands and a pen which were among the items which the victim had reported missing. These items were important and crucial in the prosecution's case.

This Court has stated that ". . . it is very clear that only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a warrantless search." *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A. 2d 727 (1972). Recently, in *Linde, supra,* a case strikingly similar to the present one, we said, concerning the search of an automobile which was independent of the defendant's arrest, that a dual inquiry must be made. First, whether there existed probable cause to search and second, whether exigent circumstances can be found to excuse the obtaining of a warrant.

In this case, the second requirement was clearly missing. At the time of the search there were no exigent circumstances justifying the failure to obtain a warrant. Indeed, the police had sufficient time to ob-

tain a search warrant because they did in fact obtain an arrest warrant. Their failure to obtain a search warrant prohibited a use of the seized evidence.

The holding of *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970), is not applicable. As we said in *Linde, supra,* "Chambers concerned the stopping of a moving vehicle for which the police had probable cause both to search and to arrest the occupants on the spot. . . ." In *Chambers* the warrantless search was justified because the police had the authority to search the vehicle which was moving.

The search in this case cannot be considered as one incident to a lawful arrest. Appellant was not in his automobile when he was arrested. A search incident to a valid arrest must be in the immediate vicinity of the arrest. *Linde, supra.*

The use of the evidence seized in the warrantless search was constitutional error and therefore the judgments at No. 226 and No. 227 are reversed and a new trial ordered.

Appellant also claims that the guilty pleas entered at No. 228 and No. 229 are invalid. These guilty pleas were motivated, according to the appellant, by the guilty verdicts at No. 226 and No. 227. This is clear from the record, the appellant claims, because the pleas were accepted to clear the docket even though appellant stated that he was innocent of the charges at No. 228 and No. 229. This question, however, was not fully considered by the trial court and we are unable to make a final determination on the record before us. The matter must be remanded and the appellant given an opportunity to file post-trial motions at No. 228 and No. 229. Since the appellant was previously denied his right to file post-trial motions, any other matter may also be raised if post-trial motions are filed.

Judgments at No. 226 and No. 277 are reversed and a new trial ordered. At No. 228 and No. 229 the matter is remanded for further proceedings in accordance with this opinion.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

The threshold question in this case is whether the appellant, who was tried and convicted in 1956, can on his present appeal claim the benefit of the exclusionary rule announced in *Mapp v. Ohio*[1] in 1961. The Court holds that he may, properly citing in support the footnote statement in *Commonwealth v. Linde,* 448 Pa. 230, 293 A. 2d 62 (1972), where the same issue was presented.[2] While I joined the opinion in *Linde,* I have now concluded, on reconsideration, that its footnote holding was in error. I am therefore obliged to dissent in the present case.

The United States Supreme Court, in *Mapp,* held that the exclusion of evidence seized in violation of the search and seizure provision of the Fourth Amendment was required of the states by the Due Process clause of the Fourteenth Amendment. Four years later, in *Linkletter v. Walker,* 381 U.S. 618, 14 L. Ed. 2d 601, the court granted certiorari "in order to settle what has become a most troublesome question in the adminis-

---

[1] 367 U.S. 643, 6 L. Ed. 2d 1081 (1961).

[2] The footnote in *Commonwealth v. Linde* was as follows: "It should be noted that although the search occurred in 1958 and therefore pre-dated the decision of *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684 (1961), which applied the federal exclusionary rule of the Fourth Amendment to the state courts, the case of *Linkletter v. Walker,* 381 U.S. 618, 85 S. Ct. 1731 (1965), held the *Mapp* ruling applicable to any judgment not finalized, a condition that can be said to exist only when availability of direct appeal has been exhausted, prior to June 19, 1961. See *Commonwealth v. Ellsworth,* 421 Pa. 169, 218 A. 2d 249 (1966). Since an appeal nunc pro tunc is a direct attack on the judgment of sentence, appellant gets the benefit of the *Mapp* ruling and its progeny."

tration of justice", namely, whether and to what extent the holding in *Mapp* was retrospective. 381 U.S. at 620. Its holding was that the *Mapp* rule does *not* require retrospective application. While the Court may have settled the question for most jurisdictions, it unfortunately continues to be troublesome in Pennsylvania. Dissenting in *Jenkins v. Delaware*, 395 U.S. 213, 23 L. Ed. 2d 253 (1969), Mr. Justice HARLAN observed, "[T]he time has come for us to take a fresh look at the whole problem of retroactivity." 395 U.S. at 224. I venture to think this is true also in our state, at least with respect to *nunc pro tunc* appeals.

The *Mapp* decision was announced June 19, 1961. The conviction of burglary in *Linkletter* was obtained in 1959 and was affirmed by the Supreme Court of Louisiana in February, 1960. Immediately after the *Mapp* decision, Linkletter sought by means of habeas corpus proceedings, first in the state courts and then in the federal, to challenge his conviction on the ground that it was obtained in violation of *Mapp*. In holding *Mapp* nonretrospective, the Court, through Mr. Justice CLARK, reasoned as follows:

"Mapp had as its prime purpose the enforcement of the Fourth Amendment through the inclusion of the exclusionary rule within its rights. This, it was found, was the only effective deterrent to lawless police action. . . . We cannot say that this purpose would be advanced by making the rule retrospective. The misconduct of the police prior to Mapp has already occurred and will not be corrected by releasing the prisoners involved. Nor would it add harmony to the delicate state-federal relationship of which we have spoken as part and parcel of the purpose of Mapp. Finally, the ruptured privacy of the victim's home and effects cannot be restored. Reparation comes too late.

... In rejecting the Wolf doctrine[3] as to the exclusionary rule the purpose was to deter the lawless action of the police and to effectively enforce the Fourth Amendment. That purpose will not at this late date be served by the wholesale release of the guilty victims.

"Finally, there are interests in the administration of justice and the integrity of the judicial process to consider. To make the rule of Mapp retrospective would tax the administration of justice to the utmost. Hearings would have to be held on the excludability of evidence long since destroyed, misplaced or deteriorated. If it is excluded, the witnesses available at the time of the original trial will not be available or if located their memory will be dimmed. To thus legitimate such an extraordinary procedural weapon that has no bearing on guilt would seriously disrupt the administration of justice." 381 U.S. at 636-8.

The Court ended its opinion by distinguishing the areas in which it had applied a new rule retrospectively. In each of them, observed Mr. Justice CLARK, "the principle that we applied [retroactively] went to the fairness of the trial—the very integrity of the fact-finding process. Here . . . the fairness of the trial is not under attack. All that petitioner attacks is the admissibility of evidence, the reliability and relevancy of which is not questioned, and which may well have had no effect on the outcome." *Id.* at 639.

It may seem strange, given the clarity of the nonretroactive holding of *Mapp* as set forth in *Linkletter,* that in *Commonwealth v. Linde,* supra, and now in the present case, our Court is applying *Mapp* to convictions obtained years ago. The reason is understandable; it

---

[3] *Wolf v. Colorado,* 338 U.S. 25, 93 L. Ed. 1782 (1949). This case, while holding the Fourth Amendment applicable to the states through the Fourteenth Amendment, had refused to apply the exclusionary rule to the states.

lies in our interpretation of what the Supreme Court in *Linkletter* meant in restricting the *Mapp* holding "to state court convictions which had become final before rendition" of that opinion. 381 U.S. at 622. "By final", said the Court in a footnote, "we mean where the judgment of conviction was rendered, *the availability of appeal exhausted,* and the time for petition for certiorari had elapsed before our decision in Mapp v. Ohio." 381 U.S. 622, footnote 5. (Emphasis added). Our Court said in *Commonwealth v. Linde,* supra, 448 Pa. at 232, footnote 2, that the availability of direct appeal cannot be said to be exhausted when a direct appeal *nunc pro tunc* can still attack the judgment of sentence. See also, *Commonwealth v. Little,* 432 Pa. 256, 248 A. 2d 32 (1968); *Commonwealth v. Dravecz,* 424 Pa. 582, 592, 227 A. 2d 904 (1967) (concurring opinion of Mr. Justice EAGEN); *Commonwealth v. Ellsworth,* 421 Pa. 169, 218 A. 2d 249 (1966).

The appeal *"nunc pro tunc"* concept is perhaps one unique to Pennsylvania. At any rate, it serves the useful purpose of allowing this Court to give meaningful implementation to the right of appeal as it exists in Pennsylvania, and to the federal constitutional guarantees incident to an appeal, as exemplified by *Douglas v. California,* 372 U.S. 353, 9 L. Ed. 2d 811 (1963).

In *Commonwealth v. Faison,* 437 Pa. 432, 264 A. 2d 394 (1970), this Court endeavored to articulate the issues that would be cognizable in a *nunc pro tunc* appeal. We there stated (437 Pa. at 441, 442):

"As indicated above, this is a direct, albeit belated, appeal from the original judgment of sentence imposed upon appellant by the Philadelphia County Court of Oyer and Terminer. In such a *nunc pro tunc* appeal taken pursuant to a finding that the appellant was denied his Douglas rights, the appellant may raise only those issues which might have been pressed on a timely appeal. The ordinary standards governing the scope of

appellate review are complicated, however, in two respects by the time interval between the judgment of sentence and the *nunc pro tunc* appeal: (1) intervening court decisions which declare new rights, constitutional or otherwise, may affect the grounds of appellant's appeal, providing a basis for relief which was not available during appellant's original appeal period; and (2) post-conviction or collateral proceedings initiated by appellant between sentence and appeal may affect those issues which he may properly press on appeal.

"As to the first complicating factor, we hold that an appellant may press on a *nunc pro tunc* appeal an issue premised on a constitutional right which was enunciated subsequent to his original judgment of sentence, provided that this right has been given such retroactive effect that it would have been available to appellant had an appeal been timely filed. See Commonwealth v. Little, 432 Pa. 256, 248 A. 2d 32 (1968).[7]

"In Commonwealth v. Dessus, 423 Pa. 177, 224 A. 2d 188 (1966) a unanimous court, speaking through Mr. Chief Justice BELL, stated that an issue raised for the first time on appeal would be considered 'where public policy or the interests of justice require a consideration and determination thereof.' Both these considerations dictate that an appellant should be able to press on appeal any issue as to a constitutional right enunciated after his judgment of sentence and given retroactive effect. Were this not the case, the appeal would not be

---

"[7] We note that a contrary view was expressed in Commonwealth v. Jefferson, 430 Pa. 532, 243 A. 2d 412 (1968). The opinion in that case represented the view of only two members of the Court, and a majority of this Court has subsequently held of 'no binding precedential value' the statement in that opinion that the rights on a *nunc pro tunc* appeal are determined by the law as it existed when a timely appeal would have been filed. See Commonwealth v. Little, supra, at p. 260."

an end to litigation but only a prelude to post-conviction proceedings in which the constitutional issue would be raised. To bar an appellant from raising such issues would serve neither the ends of fairness to the appellant nor the policy of expeditiously terminating litigation. See also Kuchinic v. McCrory, 422 Pa. 620, 222 A. 2d 897 (1966)."

The test under *Faison*, therefore, is whether the new constitutional right enunciated after the judgment of sentence "has been given such retroactive effect that it would have been available to appellant had an appeal been timely filed". 437 Pa. at 441. In the case at bar, a timely appeal would have been filed in 1956; clearly the rule of *Mapp* would not have been available to him, for *Linkletter* has not made *Mapp* retroactive. To hold that Earl Heard or Elmer Linde, because they were denied their "Douglas rights" (i.e., the Commonwealth has not been able to sustain its burden to prove that the defendants knowingly waived their rights of appeal, *Commonwealth v. Robinson*, 442 Pa. 512, 276 A. 2d 537 (1971)), are now, 15 and more years after their respective trials, to have the benefit of the nonretroactive *Mapp* rule, when defendants who took timely appeals from similar convictions in the pre-1961 period may not claim the benefit of the rule seems to me nonsensical and inequitable. Full appellate rights can be accorded Heard without giving him a windfall because of the fortuity of delay. Decisions such as this one and *Linde* bid fair to place those strains on the administration of justice and accomplish the release of prisoners convicted on relevant evidence which motivated the *Linkletter* court to find against retroactivity.

By its phrase "availability of appeal exhausted" the *Linkletter* court was certainly speaking in terms of the appeals taken within normal time limits, not the extended *"nunc pro tunc"* limits by which our state endeavors, and properly so, to make whole a defendant who was

unaware of his rights relative to timely appeal. Support for this position is found in the Supreme Court's decision in *Jenkins v. Delaware*, 395 U.S. 213, 23 L. Ed. 2d 253 (1969). *Johnson v. New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882 (1966), had held that *Miranda* should apply only to trials begun after the decision was announced, —i.e., June 13, 1966. In *Jenkins* the defendant's first trial predated the *Miranda* decision. He was later awarded a new trial, which commenced in 1967. The Court held that on that trial, as on the first, the defendant was not entitled to the benefit of *Miranda*. Chief Justice WARREN's reasons for refusing to apply the *Miranda* holding to the new trial of *Jenkins* seem to me to speak with equal cogency in favor of not applying the *Mapp* holding to judge the correctness of the ruling on evidence in Heard's case, tried years earlier: "This same concern for the justifiable reliance of law enforcement officials upon pre-Miranda standards militates against applying Miranda to retrials, which would place a much heavier burden upon prosecutors to compensate for the inadmissability of incriminating statements obtained and admitted into evidence pursuant to practices not previously proscribed. [Citations omitted]. As we stated in [Stovall v. Denno, 388 U.S. 293, 18 L. Ed. 2d 1199 (1967)], '[I]nquiry would be handicapped by the unavailability of witnesses and dim memories.' 388 U.S. at 300, 18 L. Ed. 2d at 1205. The burden would be particularly onerous where an investigation was closed years prior to a retrial because law enforcement officials relied in good faith upon a strongly incriminating statement, admissible at the first trial, to provide the cornerstone of the prosecution's case. Moreover, we cannot assume that applying Miranda to retrials would affect only a small number of cases. It could, for example, render significantly more difficult the prosecutions of defendants, some of whom may have been convicted many years ago, who

are afforded retrials because their convictions were obtained in violation of recently articulated constitutional principles that are fully retroactive." 395 U.S. at 220-221.

For the reasons stated above, I dissent.

Mr. Chief Justice JONES joins in this dissenting opinion.