677 A.2d 311

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Randy Lee KILGORE, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 2, 1995.

Decided Dec. 26, 1995.

Allen H. Smith, York, for Kilgore.

Christy H. Fawcett, York, for the Commonwealth.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

NIX, Chief Justice.

On July 15, 1992, Appellant, Randy Lee Kilgore ("Appellant"), was convicted by a jury of possession of a controlled substance with intent to deliver and delivery of a controlled substance.[1] Appellant filed post-trial motions alleging, *inter alia*, that the court erred in failing to suppress evidence of cocaine found in his vehicle during a warrantless, nonconsensual search. The trial court denied Appellant's post-trial motions. On appeal, the Superior Court affirmed the judgment of sentence. We granted allowance of appeal to review the propriety of the warrantless search of Appellant's vehicle. For the reasons that follow, we reverse.

Appellant's arrest resulted from an undercover operation in which police utilized an informant, Scott Winter ("Winter"), to act as an intermediary in a drug transaction. At or about 7:00 p.m. on July 6, 1991, Winter and Appellant's former wife, Kelly Jo Kilgore ("Kilgore"), met in the parking lot of the Brogue General Store in Chanceford Township, York County. There, Winter informed Kilgore that he had a buyer at a nearby location who was interested in purchasing an ounce of cocaine. Winter indicated that if the buyer were satisfied with the quality of this cocaine, Winter would purchase an additional three and one-half ounces on his behalf. Winter then gave Kilgore $1,300 from funds supplied by police, and Kilgore got back in her car and drove away in order to get the ounce of cocaine.

Kilgore drove to the farm residence of her father where she met with Appellant. A surveillance officer who had been following in an unmarked car observed Kilgore and Appellant

1. 35 Pa.C.S. § 780–113(a)(30).

walk toward a pickup truck that was parked in the driveway. The officer lost sight of the two suspects as he drove past the residence in order to turn his vehicle around without being seen. When he returned, he saw Appellant and Kilgore walking away from the truck. Kilgore then got into her car and returned to the parking lot of the Brogue General Store where she gave Winter approximately one ounce of cocaine. Immediately after the transaction, police moved in and arrested Kilgore. A search of her person uncovered a small quantity of cocaine and related paraphernalia; however, Kilgore did not have the $1,300 nor did she have the additional three and one-half ounces of cocaine.

When police arrived at the residence of Kilgore's father, one of the troopers went to the back door. Upon seeing someone run from the kitchen, the trooper announced the presence of the police and entered. He found Appellant in the living room and placed him in custody. The premises were then searched with the consent of Kilgore's father; however, police failed to recover the additional cocaine or the $1,300 paid to Kilgore.

The search then turned to Appellant's truck which was parked at the rear of the residence. Without a warrant or Appellant's consent, police entered the vehicle and found a McDonald's beverage cup on the floor of the passenger's side. Inside the cup were napkins and wrappers which covered several small bags containing approximately three and one-half ounces of cocaine. As a result of this discovery, Appellant was placed under arrest. He later told police that he had hid the missing money under the living room carpet. A subsequent search of that location uncovered $2,100, which included the $1,300 in prerecorded bills that Winter had given to Kilgore.

Prior to trial, Appellant sought to suppress the cocaine that was discovered in his truck. The suppression court denied the motion holding that

the police had probable cause to believe, based on the interaction between [Kilgore] and [Appellant] as witnessed by the surveillance officer, that [Appellant] was involved

with the drug transaction. The officers had probable cause to believe that [Appellant] was transporting drugs for Kelly Kilgore for the purpose of the sale, which occurred at the Brogue store.

*Commonwealth v. Kilgore*, No. 2081 C.A.1991, slip op. at 4–5 (C.P. York County Mar. 1, 1993).

On appeal, the Superior Court affirmed the lower court's denial of the suppression motion. *Commonwealth v. Kilgore*, 437 Pa.Super. 491, 650 A.2d 462 (1994). Like the suppression court, the Superior Court reasoned that police had probable cause to believe that cocaine was present in Appellant's vehicle based on the observations of the surveillance officer who saw Appellant and Kilgore walking to and from Appellant's vehicle without having entered the residence. *Id.* at 497–98, 650 A.2d at 465. Thus, the court believed that when the search of the residence failed to uncover the missing money and cocaine, the police had probable cause to believe that those items were in Appellant's vehicle. *Id.* Although we agree that the facts as presented to the suppression court would lead one to intuitively deduce that the cocaine and money were present in Appellant's vehicle, we are unpersuaded that a warrantless search of the vehicle was justified under the circumstances of this case.

"It is well established that our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Morris*, 537 Pa. 417, 420, 644 A.2d 721, 723, *petition denied*, —— U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994) (citation omitted). A review of the record in the instant matter fails to disclose any of the recognized exceptions to the search warrant requirement that would justify the search of Appellant's truck.

In *Commonwealth v. Cockfield*, 431 Pa. 639, 246 A.2d 381 (1968), this Court addressed the legality of a warrantless search of an automobile conducted under circumstances quite similar to those presented in the instant case. In holding that

the search of the defendant's vehicle was unreasonable under the Fourth Amendment, we stated:

> Certainly a search without a warrant is not reasonable simply because the officers have probable cause to believe that incriminating evidence will be disclosed. If this constituted "exigent circumstances," it would be almost impossible to think of a case in which a warrant would be necessary. And certainly an automobile is not *per se* unprotected by the warrant procedure of the Fourth Amendment. Although it *sometimes* may be reasonable to search a movable vehicle without a warrant, the movability of the area to be searched is not alone a sufficiently "exigent circumstance" to justify a warrantless search. Other circumstances, for instance a serious possibility that the movable vehicle may, in fact, be moved before a warrant can be obtained, are necessary.

*Id.* at 644, 246 A.2d at 384 (citations omitted). Thus, because the defendant was in police custody at the time of the search and because there was no legitimate reason to believe that the car would be moved, we held that the failure of the police to obtain a search warrant necessitated the exclusion of the evidence derived from that search. *Id.* at 644–45, 246 A.2d at 384.

Likewise, in *Commonwealth v. Linde,* 448 Pa. 230, 293 A.2d 62, *cert. dismissed,* 409 U.S. 1031, 93 S.Ct. 523, 34 L.Ed.2d 482 (1972), this Court also found that a warrantless search of a vehicle was unreasonable where no exigent circumstances were present. In *Linde,* the defendant shot his estranged lover five times and then turned the gun on himself. The victim died instantly, and the defendant was transported by ambulance to a nearby hospital. A police officer went to the hospital to obtain the keys to the defendant's vehicle which was parked at a service station near the scene of the murder. A subsequent search of the vehicle uncovered a notebook of highly incriminating writings authored by the defendant. The writings were introduced against the defendant at trial.

In analyzing the reasonableness of the warrantless search of the defendant's vehicle, this Court again set forth the analysis necessary to justify such a search. "[A] dual inquiry, both

parts requiring affirmative answers must be made: first, whether there existed probable cause to search; and secondly, whether exigent circumstances can be found to excuse the obtaining of a warrant." *Id.* at 233, 293 A.2d at 63–64. These principles were recently reaffirmed by this Court in *Commonwealth v. Labron,* 543 Pa. 86, 669 A.2d 917 (1995), wherein we held that

> this Commonwealth's jurisprudence of the automobile exception has long required both the existence of probable cause and the presence of exigent circumstances to justify a warrantless search. Furthermore, we have consistently recognized that *when police have advance information that a particular vehicle carrying evidence of a crime would be situated at a particular locale, such that sufficient time exists to obtain a warrant, the failure of the police to secure a warrant prior to searching the vehicle will render the search unreasonable.*

*Id.* at 100–101, 669 A.2d at 924 (emphasis added).

In the instant case, there is ample evidence in the record to support the suppression court's finding that police had probable cause to believe that the cocaine and money were in Appellant's vehicle; however, we are unable to ascertain the presence of any exigent circumstances which would justify the failure of police to obtain a search warrant prior to searching the vehicle.

The record discloses that at least three of the officers involved in the undercover investigation were at the residence of Appellant's father-in-law at the time of the search of Appellant's vehicle. The police had Appellant in custody while they conducted a consensual search of the residence. Appellant's vehicle was parked outside at the rear of the residence. Clearly, one of the officers could have secured the vehicle while a search warrant was obtained. The Commonwealth has failed to meet its burden of establishing that exigent circumstances existed such that it would have been impracticable for police to have obtained a search warrant under the circumstances presented herein. *See* Pa.R.Crim.P. 323(h) ("The Commonwealth shall have the burden of going forward with

the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights."). Accordingly, we are constrained to conclude that the search of Appellant's vehicle was conducted in a manner which violated his rights under the Fourth Amendment, and thus, the fruits of that warrantless search should have been suppressed.

Order reversed.

CASTILLE, J., files a dissenting opinion.

MONTEMURO, J., who participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f), concurs in the result.

CASTILLE, Justice, dissenting.

The majority holds that although probable cause existed to search appellant's car, the cocaine and money found in appellant's car must be suppressed because appellant was in custody and police could have guarded the car until they were able to secure a warrant to search it. I believe that such a ruling ignores the circumstances of the search as well as the impact that such a ruling makes upon the limited resources of police. Accordingly, because I believe the majority's holding all but eviscerates the automobile exception to search warrant requirements, I must dissent.

It is well established that a warrantless search of an automobile does not offend the Fourth Amendment where, *inter alia*, there is probable cause to search the vehicle and where exigent circumstances exist. *Commonwealth v. Milyak*, 508 Pa. 2, 7–8, 493 A.2d 1346, 1349 (1985) (citations omitted); *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978) (the realities and practicalities of law enforcement dictate that where exigent circumstances exist, the warrant requirement is excused) (citation omitted); *Commonwealth v. Lewis*, 442 Pa. 98, 100, 275 A.2d 51, 52 (1971) (warrantless search is proper where probable cause exists to believe evidence of a crime is concealed in the vehicle). This "automobile exception" to the warrant requirement was recognized as a result of the re-

duced expectation of privacy a person has with respect to his or her automobile, the exigency created by the mobility of a car, and that due to the exigency it would be unlikely that the vehicle would be available by the time police were able to obtain a warrant. *Commonwealth v. Smith,* 452 Pa. 1, 5, 304 A.2d 456, 458 (1973), *cert. denied,* 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973), *citing Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). In finding that the automobile exception does not apply to the search at issue, the majority has essentially eviscerated the entire automobile exception since it now holds that if a police officer can be made available to guard the car while another officer obtains a warrant, then there is no exigency because it is no longer unlikely that the police guarded vehicle will be unavailable by the time a warrant was obtained. Ignoring the time it may take for police to: return to their headquarters, type up an affidavit, obtain approval of the affidavit from the local District Attorney's office (if required), locate a neutral and detached magistrate to approve the warrant, have the warrant approved (assuming no changes are needed), and possibly round-up additional back-up, the majority has now imposed a duty upon police to idly watch over a car until a warrant is obtained, whenever that time might be. One of the purposes behind the automobile exception was to prevent this type of drain on law enforcement. *See United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *accord Commonwealth v. Timko,* 491 Pa. 32, 38, 417 A.2d 620, 623 (1980) (the basis for allowing warrantless searches of automobiles is based upon the inherent mobility of vehicles, the consequent practical problems of obtaining a warrant prior to infringing a legitimate expectation of privacy, and the diminished expectation of privacy which is accorded automobiles because of their open construction, their function, and their subjection to a myriad of state regulations).

Moreover, policy considerations also support the police officers' immediate warrantless search of the vehicle as opposed to requiring some officers to remain at the scene, securing the vehicle, while other officers seek out a search warrant. Re-

quiring a number of police officers to remain with a suspect *and* a vehicle for an indefinite and uncertain amount of time will exhaust the limited resources of law enforcement and further ignores the realities attendant to the demands placed on law enforcement in modern society. Under such circumstances, the officers who secure the vehicle will not be available to respond to any other police emergencies. Many automobile investigations occur after regular hours and where, as here, the incident occurs in a rural area, procurement of a search warrant could take hours depending on the distance from the nearest magistrate and the location of the impoundment of the vehicle.

As stated by this Court in *Commonwealth v. Milyak,* 508 Pa. at 9–10, 493 A.2d at 1349, immobilization of a vehicle until a search warrant is obtained is merely an *alternative* to an immediate warrantless search of a vehicle, *not* a requirement as the majority holds. *See Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970) (there is no difference between seizing and holding a vehicle before presenting the probable cause issue to a magistrate and carrying out an immediate search without a warrant; thus, given probable cause to search, either course is reasonable under the Fourth Amendment); *Commonwealth v. Baker,* 518 Pa. 145, 149, 541 A.2d 1381, 1383 (1988), *overruled in part by Commonwealth v. Rosario,* 538 Pa. 400, 648 A.2d 1172 (1994). Thus, as a matter of federal and state case law, the police officers here were not required to secure or immobilize the vehicle until a search warrant was obtained.

Both *Commonwealth v. Cockfield,* 431 Pa. 639, 246 A.2d 381 (1968) and *Commonwealth v. Linde,* 448 Pa. 230, 293 A.2d 62 (1972), *cert. dismissed,* 409 U.S. 1031, 93 S.Ct. 523, 34 L.Ed.2d 482 (1972), upon which the majority rely, are readily distinguishable from the instant case. In *Cockfield,* police officers were patrolling a neighborhood on April 7, 1960, at approximately 2:30 a.m., when they discovered a house fire. When firemen gained entry into the home, the dead bodies of a woman and her two young children were found. Police and

fire officials detected a strong odor of gasoline or kerosene on the premises.

At approximately 3:40 a.m., two detectives who were investigating the fire spoke with a neighbor of the victims. The neighbor informed them that the deceased woman had a relationship with a man who was later determined to be Cockfield. The woman said that the couple's relationship had been strained and that Cockfield assaulted the woman with a knife approximately one month prior to the fire. The neighbor also informed the police that Cockfield drove a 1953 or 1954 Dodge or Plymouth car with a bluish top and dirty white or gray at the bottom. Shortly after 5 a.m., the detectives and two other officials went to the neighborhood where Cockfield was believed to live. A neighborhood resident directed the officials to Cockfield's house. The officers rang Cockfield's doorbell and knocked on the door but no one responded.

The officers then walked through the general area to see if there was an automobile which matched the description given to them. A car fitting the description was parked approximately three-fourths of a block away. The officers felt the hood of the car and it was quite warm indicating that the motor had recently been operating. One of officers took the license plate number to ascertain the identity of the registered owner. However, within minutes, the officer returned to the location of the vehicle with the deceased woman's sister who told the police that the vehicle belonged to Cockfield. The police then opened the trunk of the car, which smelled of gasoline, and discovered a two gallon empty can marked "Gulf" and a roll of charred toilet paper. The officers maintained surveillance of the automobile until approximately 8 a.m., however, Cockfield never appeared. Consequently, the police towed the automobile to a nearby police station where it was parked and disabled by removing the distributor and disconnecting certain electrical wiring. Later that day, Cockfield discovered his automobile parked in front of the police station. Cockfield went inside the station and inquired as to why his vehicle was at the station. A duty officer told Cockfield that he could take the car. Thus, Cockfield pur-

chased and installed the necessary parts and drove the car away.

On April 8, 1960, at approximately 1 a.m., police took Cockfield into custody and questioned him regarding the fire. On April 9, 1960, Cockfield signed an inculpatory statement. Thereafter, police took Cockfield's automobile into custody a second time. After Cockfield was arraigned, police officers unlocked the trunk of the automobile and seized the gasoline can and charred toilet paper which the Commonwealth introduced as evidence at Cockfield's trial.

This Court concluded that the evidence seized from Cockfield's vehicle must be suppressed because the warrantless search of the vehicle was unreasonable under the Fourth Amendment. This Court reasoned that since Cockfield was in police custody at the time of the search, there was no legitimate reason to believe that the car would be or could be moved. Consequently, this Court held that there were no exigent circumstances which justified the warrantless search. *Id.* at 645, 246 A.2d at 384.

In *Linde,* police arrived at the defendant's girlfriend home and discovered that both Linde and his girlfriend had been shot. The girlfriend died instantly as a result of five gunshot wounds, however Linde survived and was transferred to a hospital. The police located Linde's automobile which was parked at a service station approximately 550 yards from his girlfriend's home. One police officer went to the hospital and obtained Linde's car keys from a hospital custodian. The officer returned to the service station where officers unlocked and searched the car. The officers found a notebook containing five pages of handwritten incriminating statements. Ten days later, the police went to the hospital and presented the incriminating notes to Linde. After acknowledging that he owned the notebook and that he wrote the notes, Linde initialed each page. The Commonwealth introduced the writings as evidence against Linde at trial.

This Court held that the writings seized from Linde's vehicle must be suppressed because even assuming that the

police had probable cause to search the vehicle, the exigent circumstances required for a warrantless search were clearly absent because the vehicle was under constant police guard from the moment it was located to the moment the police searched it; the vehicle was locked, unoccupied, and the police had possession of the keys; and because Linde himself was in the hospital undergoing emergency surgery and therefore, there was no danger he would move the car.

Clearly, *Cockfield* and *Linde* both involved searches of vehicles which had been in police custody and which police had immobilized for several hours prior to conducting a search. Consequently, in those cases, unlike the instant case, the police had ample opportunity to procure a search warrant. Here, police conducted the search at issue only after the police had reason to believe that appellant was in possession of additional cocaine and the prerecorded money. The car was located on a third party's property and was within reach of appellant's father who was present. Under these circumstances, I would find that exigent circumstances existed. *Commonwealth v. Milyak, supra* at 7–8, 493 A.2d at 1349; *Commonwealth v. Rodriguez,* 526 Pa. 268, 585 A.2d 988 (1991) (probable cause and exigent circumstances existed where reliable confidential informant supplied police with information regarding appellant's illegal activities, where informant told police that appellant would be at a certain location, on a certain date and that appellant would be selling drugs; moreover, since police did not know appellant would be travelling in that specific vehicle on the date in question until they saw appellant driving, the warrantless search of defendant's vehicle was valid); *Commonwealth v. Baker, supra* (warrantless search of vehicle proper where police received information from a reliable informant that defendant assaulted an individual in an alley with a gun and that the defendant exited the scene in a particular automobile and within minutes of the informant's information, police located that automobile and placed defendant under a brief period of surveillance and stopped defendant only when he attempted to drive away).

Accordingly, I would affirm the order of the Superior Court.