**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Angel PAREDES–ROSARIA, Appellee.**

Superior Court of Pennsylvania.

Argued April 29, 1997.

Filed Aug. 19, 1997.

Reargument Denied Oct. 31, 1997.

Iva C. Dougherty, Assistant District Attorney, Reading, for Commonwealth, Appellant.

* Retired Justice assigned to Superior Court.

David R. Dautrich, Reading, for Appellee.

Before BECK, POPOVICH and MONTEMURO*, JJ.

POPOVICH, Judge.

■ The Commonwealth appeals the order of the Court of Common Pleas of Berks County granting the defendant/Angel Paredes–Rosario's motion to suppress and writ of habeas corpus.[1] We reverse.

■ Where the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137, 139 (1983). Application of this standard reveals that Detective Andrea O. Kohut, of the District Attorney's Narcotics Enforcement Team (DANET), learned on December 8, 1995, the defendant was involved in drugs (heroin and cocaine). He used a rented vehicle to drive to New York to purchase the drugs and returned to the York, Pennsylvania area to deal. The confidential informant also gave the detective a description of the defendant and his address, both of which were verified.

On February 10, 1996, the confidential informant advised Detective Kohut the defendant would be leaving for New York at 3:00 p.m. in a rented, four-door champagne colored Nissan Altima with license number AXY9955. Prior to leaving, however, the defendant picked up an Hispanic male (the confidential informant) at Eleventh and Marion Streets, all of which was confirmed by Kohut before returning to her office to await developments.

The next contact with the confidential informant was by phone at 5:00 p.m., wherein he relayed the two were en route to New York. The second call came at 10:00 p.m. informing Detective Kohut that "they were having problems getting the cocaine." A

---

1. An order granting a writ of habeas corpus is appealable. *Commonwealth v. Hess*, 489 Pa. 580, 414 A.2d 1043, 1047 (1980).

third call at 11:30 p.m. repeated the earlier statement. The last communique at 1:15 a.m. (on the 11th of February) stated the defendant and Hispanic male were returning with fifty grams of heroin and were outside of Reading on Route 78. The confidential informant also told Kohut that heroin was located in the rear seat of the Nissan.

With the last contact of the confidential informant, Detective Kohut discontinued her preparation of the application for a search warrant and drove with her supervisor (Lieutenant Pease), and a backup of nine officers, to a location where the defendant was expected to drive. Within five minutes of their arrival, the defendant was spotted and followed for six miles before being stopped. Lieutenant Pease identified himself and told the defendant the police had reason to believe he was transporting drugs, the search for which would be accomplished upon the completion of a search warrant if consent were not given. More specifically, the officer stated:

I showed [the defendant] my identification, told him who I was, told him that we stopped him because we had reason to believe that he was transporting drugs and that we had a partial search warrant completed and that it would be completed and a search of his car would be conducted unless he decided to give us consent to search, then we would not need a search warrant and it would save time.

In reply to Lieutenant Pease's statement, the defendant waited "about a minute ... then he said, okay, you can search the car." Heroin (49.5 grams) was discovered behind the rear seat in a clear plastic bag. The defendant was charged with possession of a controlled substance and possession with intent to deliver a controlled substance. An omnibus pre-trial motion seeking to suppress and discharge the defendant via a writ of habeas corpus was filed. After a hearing, the relief requested was granted and the defendant was discharged.

The Commonwealth perfected the present appeal and raises various issues for our consideration, the first of which assigns error to the court in requiring the police to obtain a search warrant in advance of having probable cause to do so.

█ It is the court's position the police "had sufficient probable cause to request that a magistrate issue a search warrant at least *eight hours before* the police stopped the four door Nissan Ultima [*sic*] rented by the Defendant on I–78 * * * at approximately 1:45 a.m." Court Opinion, 11/26/96 at 6–7 and 9 (Emphasis added).

It is true the police had information on December 8, 1995, that the defendant was dealing in drugs at a specific address and he rented vehicles to New York to replenish his supply. Further, the authorities were advised of the date, time, model, color and license number of the vehicle for the sojourn by the defendant in the company of the informant. Finally, once the trip had begun, the police monitored the defendant's activities by way of the informant's calls.

Before the New York trip had been completed, the informant contacted the police five times: The first advised of the time and place of departure; the second confirmed the destination; the third and fourth described the difficulty in purchasing cocaine. When the two men were twenty to twenty-five minutes from DANET's office, the last contact was made at 1:15 a.m. to Detective Kohut to state their location and to *confirm* the defendant's transportation of heroin.

Prior to 1:15 a.m., the police lacked sufficient information to secure a warrant to search the defendant's vehicle for drugs. Stated otherwise, there was no probable cause to believe that a crime had been or was being committed (possession of a controlled substance) and the defendant was the guilty party before 1:15 a.m., following which he was sighted, pursued and apprehended at 1:45 a.m. See *Commonwealth v. Baker*, 518 Pa. 145, 541 A.2d 1381, 1383 (1988)(Police stop of vehicle thirty minutes after report of crime validated warrantless search given presence of probable cause and exigencies of mobility of vehicle); see also *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988, 990 (1991) (Defining probable cause to conduct warrantless arrest).

The *thirty-minute* span between disclosure of the defendant's possession of heroin and the vehicular stop is a far cry from the *eight hours* referred to by the court to afford the police time to complete a search warrant.[2] Since the record is not supportive of the court's statement of fact, we are not bound by it nor any conclusion of law drawn therefrom. *Commonwealth v. Stadtfeld,* 445 Pa.Super. 271, 665 A.2d 487, 492 (1995).

Next, the Commonwealth argues the court erred in suppressing the evidence seized with the presence of exigent circumstances allowing for the warrantless search of the defendant's vehicle.

In *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896 (1995), our high Court held that police may not conduct a warrantless search of an automobile after its occupants have been arrested and are in police custody without the presence of exigent circumstances and probable cause.[3]

It is reasonable to say that Rosario was not free to leave, and he was subject to the control of the officers on the scene, once he came out of the vehicle to speak to Lieutenant Pease. Had he attempted to leave, it seems likely that he would have been restrained according to Detective Kohut's account of events. N.T. 26. He was, therefore, under arrest and not capable of destroying any evidence within the vehicle.

■ This would appear to undermine the police's action under *White* since no warrant was secured prior to searching the vehicle. However, we read the record to establish the defendant's consent to search his vehicle, which fact neutralizes the police's failure to secure a warrant.

■ In assessing whether the consent which was given by the appellee after his arrest was voluntary, we look to various criteria to make the determination. For exam-

ple, although a defendant's arrest is a relevant factor to consider, we recognize "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." *United States v. Watson,* 423 U.S. 411, 423, 96 S.Ct. 820, 827–28, 46 L.Ed.2d 598 (1976). Accord *Commonwealth v. Washington,* 438 Pa.Super. 131, 651 A.2d 1127, 1130 (1994); *Commonwealth v. Bagley,* 408 Pa.Super. 188, 596 A.2d 811, 817 (1991), cert. denied, 506 U.S. 1002, 113 S.Ct. 606, 121 L.Ed.2d 541 (1992).

In *Commonwealth v. Elliott,* 376 Pa.Super. 536, 546 A.2d 654 (1988), Trooper Heckman stopped the defendant for a Motor Vehicle Code violation. In gathering information, the trooper detected an odor of alcohol emanating from the vehicle, observed empty beer bottles inside and learned the passenger was underage. When the passenger exited the vehicle, the trooper observed marijuana in a bag protruding from under the passenger's seat. The trooper directed both occupants from the vehicle and to place their hands on the police cruiser. A pat-down produced a knife on the passenger and a "stash kit" of marijuana from the defendant. Both parties were advised of their constitutional rights.

The second trooper at the scene asked the defendant to consent to a search of his vehicle. Albeit hesitant at first, the driver signed a consent form when the trooper confronted him with the fact there was sufficient basis to secure a search warrant in the event he refused to consent. The search that ensued produced drug contraband and cash. Based on the seizure, the defendant was charged with violations of the Controlled Substance, Drug, Device and Cosmetic Act. The court suppressed all evidence seized after the passenger was ordered from the vehicle as "fruit of the poisonous tree". In the course of reversing, a panel of this Court

---

**2.** Detective Kohut testified that the drug enforcement office was located 20–25 minutes from where the intended interception of the defendant would take place after the 1:15 a.m. call.

**3.** Two other cases were written by the Pennsylvania Supreme Court at the time *White* was issued. See *Commonwealth v. Labron,* 543 Pa. 86, 669 A.2d 917 (1995) and *Commonwealth v. Kilgore,* 544 Pa. 439, 677 A.2d 311 (Pa.1995). Interest-

ingly, all three stand for the proposition reversed by the United States Supreme Court in *Labron* and *Kilgore* on the basis that Pennsylvania's reliance on *federal grounds* to invalidate a warrantless search of an automobile after its operator is in police custody is not in accord with federal law. *Pennsylvania v. Labron,* —— U.S. ——, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).

held the defendant consented to a search of his vehicle; to-wit:

> The question of whether an arrested individual has voluntarily consented to a search "is one of fact which must be determined in each case from the totality of the circumstances." So long as the consent is voluntarily given and the person consenting has authority to consent, a warrantless search is proper.
>
> We find that the circumstances surrounding [the defendant's] consent to the search of his vehicle indicate that his consent was voluntarily given. In *Commonwealth v. Chiesa*, 329 Pa.Super. 401, 478 A.2d 850 (1984), we concluded that the warrantless searches of the defendant's vehicle and basement were proper because he had voluntarily consented to the search. We based our finding of voluntariness primarily on the fact that the defendant had been thoroughly informed of his *Miranda* rights and had signed a written consent form prior to the search. *We also rejected the defendant's argument that his consent was involuntary because the officer told him that he would obtain a warrant if the defendant refused to comply,* and because of the incriminating evidence had already been found in "plain view". *Id.* Likewise, in the present case we find the fact that [the defendant] may have felt that it would have been useless to refuse to consent in light of the incriminating evidence which had already been discovered, and the fact that Trooper Good stated that he had sufficient information to obtain a search warrant, does not compel a conclusion that [the defendant's] consent was involuntary. * * * Prior to [the defendant] signing ... the consent form [the] defendant[ ] w[as] again fully informed of [his] constitutional rights and indicated that [he] understood those rights. Moreover, [the defendant] read and signed a written consent form prior to the search. These facts clearly support a finding that [the defendant's] consent was voluntarily obtained and not the result of the coercive efforts of the officers.

546 A.2d at 662–663 (Emphasis added; citations omitted; footnote omitted).

In *Elliott*, the defendant had been directed to "assume the position," was patted-down, had marijuana seized from his person, advised of his *Miranda* rights and had his freedom of movement inhibited all *before* consenting to a search of his vehicle. Yet, no coercion (either express or implied) was held to exist as the motivation for the defendant's consent. Here, the appellee's freedom of movement was restricted, the police informed him of the basis for the stop and that a search warrant would be completed, if need be, should the appellee refuse to consent to a search of his vehicle.

As in *Elliott*, it may have been the appellee here felt it would be useless to refuse to consent given the presence of the police and the inevitability of discovery of the heroin with the securement of an earlier drafted, but incomplete, search warrant by Detective Kohut.

We find the trooper's request of the appellee to consent to a search of his vehicle, albeit preceded by notice that a warrant would be secured should the accused refuse authorization, to be a volitional act unencumbered by the time the stop was made (1:45 a.m.), the number of police on the scene (eleven) or the posture of the police's weapons (one, possibly two, out of holster and pointing at the ground). The appellee was asked whether he would consent to a search of his vehicle. Lieutenant Pease talked with other officers to allow the appellee to reflect on his options of either consenting or awaiting the securement of a warrant prepared by Detective Kohut but not yet finished. Initially, the appellee was reluctant to consent, but with the passage of less than one minute he agreed to the search.

Further, we find no support in the record for the court's statement in its opinion at page 13 that "Lieutenant Pease then told the Defendant that *he should just consent to a search of his car* since the officers were getting a search warrant anyway and the Defendant's consent would save time." Lieutenant Pease advised the appellee that a search warrant had been partially prepared and would be completed if the appellee did not consent to a search. N.T. 29, 39–40. Nothing exists in the record to imply that the

appellee acquiesced to an order, suggestion, or request of Lieutenant Pease.

Accordingly, we find the officer's inquiry of the appellee to consent to a search of his vehicle or await the production of a previously prepared warrant was not tantamount to coercion by the police to invalidate the consensual nature of the search or render the evidence seized thereby the "fruit of the poisonous tree". *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The order suppressing the prosecution's 49.5 grams of heroin and the grant of the writ of habeas corpus discharging the appellee is reversed.

Order reversed.

BECK, J., concurs in the result.